IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL BLACKMAN, | : | CIVIL NO. 1:CV-10-0677 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, et al., | : | |
| Respondents | | |

## MEMORANDUM

Petitioner Michael Blackman ("Blackman"), at the time an inmate confined at the United States Penitentiary at Canaan ("USP-Canaan"), Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on March 29, 2010. (Doc. No. 1, Pet.) Named as Respondents are the Pennsylvania Board of Probation and Parole ("PBPP") and the Attorney General of Pennsylvania. In the petition, Blackman claims that his due process rights are being violated because the PBPP has failed to conduct a parole revocation hearing and also relinquished jurisdiction of him prior to filing the parole violator detainer presently pending against him. The petition is ripe for consideration and, for the reasons that follow, will be denied.

I.  Background

Blackman plead guilty to simple assault and was sentenced by the Court of Common Pleas of Lycoming County on July 10, 1997, and received a term of incarceration of 9 to 24 months. (Doc. No. 11-2.) His sentence became effective on January 10, 1998. His minimum release date from this sentence was October 10, 1998, and his maximum release date was January 10, 2000. (Doc. No. 11-3, Sentence Status Report.) Blackman was released on parole by the PBPP on December 8, 1998, following the expiration of his minimum sentence. (Doc.

No. 11-4, Notice of Charge/Hearing.)

While on parole, a warrant was issued for Blackman's arrest on November 10, 1999, by the New Castle, Delaware Police Department on the basis of criminal charges filed against him for conduct that occurred almost two (2) weeks earlier in Delaware. (Doc. No. 11-5, Complaint/Warrant.) On November 16, 1999, Blackman was arrested in Pennsylvania pursuant to the warrant and for violation of parole conditions. The PBPP scheduled a preliminary hearing for November 24, 1999. On said date, Blackman requested a postponement of the hearing so that his counsel could review the case. (Doc. No. 11-6.)

Blackman was thereafter extradited to Delaware on May 30, 2000, with respect to the pending criminal charges. (Doc. No. 11-7.) On February 21, 2001, he plead guilty to the charges of kidnapping, attempted robbery, and conspiracy in the Delaware Superior Court. He then began serving his sentence in a Delaware state prison. (Doc. No. 11-8.)

On March 15, 2001, the PBPP issued a detainer against Blackman so that he would be extradited back to Pennsylvania custody when he became available. (Doc. No. 11-9.) After serving his Delaware state sentence, Blackman was then transferred to a federal prison in 2008 to begin serving an outstanding federal sentence. On October 20, 2008, the PBPP sent the appropriate federal officials a copy of the March 15, 2001 warrant as a detainer for Blackman, and requested that he be extradited to Pennsylvania custody when he became available. (Doc. No. 11-10.) The United States Department of Justice responded to the PBPP on January 8, 2009, informing the PBPP that a detainer has been filed against Blackman in favor of the PBPP, and that he was tentatively scheduled to be released from federal custody on June 26, 2010. (Doc. No. 11-11, Detainer Action Letter.) At the time of the submission of a response to the pending

habeas petition, Blackman was still in federal custody.

In May of 2009, Blackman requested the PBPP to provide him with a revocation hearing while he served his federal sentence. (Doc. No. 11-12, 5/11/09 Letter.) The Board responded by informing Blackman that he would receive a revocation hearing following his release from federal custody and being made available to the parole violation detainer, and his return to Pennsylvania state custody. (Doc. No. 11-13, 6/1/09 Letter.) The Board also explained to Blackman the reasoning behind the timing of a revocation hearing, and the benefit to him in conducting the hearing following his completion of time on his new convictions - such as favorable institutional adjustment, participation of programs, etc. - information that could be mitigating at his revocation hearing.

The instant petition was filed on March 29, 2010. Following an enlargement of time, a response to the petition was submitted on June 14, 2010. (Doc. No. 11.) No traverse has been filed.

**II. Discussion**

Blackman contends that the PBPP's actions violated his procedural due process rights. "Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution. To establish a procedural due process violation, an individual must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels v. Williams, 474 U.S. 327, 339 (1986). A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its

3

revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778 (1973). The revocation of parole is one of those liberty interests that fall into this category. See Morrissey v. Brewer, 408 U.S. 471 (1972). However, as the Supreme Court has long held, the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant. Moody v. Daggett, 429 U.S. 78, 87 (1976). As clearly explained in Moody:

> Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 rape conviction will be revoked; the time at which the Commission must make that decision has not yet arrived. With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which Morrissey sought to protect. Indeed, in holding that "(t)he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation.

Moody, 429 U.S. at 86-87 (internal citations omitted).

As provided by Pennsylvania law, 37 Pa. Code § 71.5(a) sets forth the following procedures to be followed before a parolee is recommitted as a convicted parole violator:

> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>
> (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing, the revocation hearing shall be held within 120 days of the official verification of the return of

4

>                    the parolee to a State correctional facility.

37 Pa.Code § 71.4(1)(i)(internal citation omitted). Pennsylvania law further provides that "[i]f the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth." 37 Pa.Code § 71.5(a). As such, ". . . the law is clear that the 120-day period for holding a parole revocation hearing does not begin with the date of a parolee's conviction, but with the date he is returned to a Pennsylvania facility." Brown v. Pa. Bd. of Prob. and Parole, Civ. Action No. 08-203J, 2010 WL 411832, *3 (W.D. Pa. Jan. 28, 2010)(citing Davis v. Bd. of Probation and Parole, 498 A.2d 6 (Pa. Commw. 1985). This is in accordance with the Supreme Court's decision in Moody that a parole violator's loss of liberty does not occur until he is taken into custody under the parole violator warrant. See Moody, 429 U.S. at 87.

Based upon the foregoing precedent, Blackman is not entitled to a revocation hearing until after he returns to Pennsylvania custody upon completion of his sentence in federal prison. The arrest warrant in this case has not yet been executed, and only serves as a detainer to ensure Blackman's extradition to Pennsylvania and into state custody at the conclusion of his federal sentence.

Blackman argues that while awaiting his extradition to Delaware on the new criminal conduct committed while on parole, he should have been provided with his revocation hearing. This argument can be rejected without unnecessary elaboration. Pursuant to 37 Pa.Code § 71.4(1), Pennsylvania law requires a revocation hearing within 120 days after the plea of guilty to the new conduct, which did not occur until February 21, 2001. (Doc. No. 11-8.) Further,

5

since that time, Blackman has been outside the jurisdiction of the Pennsylvania Department of Corrections and, as such, the PBPP has 120 days after "the official verification of the return of the parolee to a State correctional facility" to conduct his revocation hearing. See 37 Pa.Code § 71.4(1)(i). As of the time of the filing of the response, the outstanding warrant had yet to be executed, and Blackman had not yet completed his federal sentence and been returned to the custody of the Commonwealth. Accordingly, the 120 days within which the PBPP has to conduct the revocation hearing has yet to begin.[1] In addition, there is no merit to Blackman's argument that the PBPP "relinquished jurisdiction" of him when he was extradited to Delaware. The Board had no obligation to conduct a revocation hearing at that point as Blackman had not yet been found guilty of the new crimes.

Further, in order to establish a due process violation a parolee must demonstrate that the delay he suffered was prejudicial. Clearly there exists no prejudice to Blackman in this case in that he plead guilty to the Delaware criminal charges. This criminal conviction conclusively establishes a parole violation. See Morrissey, 408 U.S. at 490. As there is no indication Blackman's conviction has been invalidated, he fails to demonstrate any prejudice resulting from the timing of his revocation hearing. The hearing will occur upon his return to a Pennsylvania state correctional institution.

For the foregoing reasons, the Court finds that the instant habeas corpus petition is

---

[1] As previously noted, Blackman had a June 26, 2010 tentative release date from federal custody. On July 7, 2010, Blackman notified the Court that he had a change of address from USP-Canaan to the Lycoming County Jail. (Doc. No. 12.) After making a telephone inquiry, it appears that Blackman has completed his federal sentence, and is now back in state custody pursuant to the detainer. If so, the clock on the 120 day time limit within which to conduct a revocation hearing would now be in effect.

without merit and should be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL BLACKMAN, | : | CIVIL NO. 1:CV-10-0677 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, et al., | : | |
| Respondents | | |

## O R D E R

**AND NOW,** this 9th day of August, 2010, upon consideration of the Petition for Writ of Habeas Corpus (Doc. No. 1), **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Petition for Writ of Habeas Corpus is **denied**.

2. The Clerk of Court is directed to close this case.

3. There is no basis for the issuance of a Certificate of Appealability.

S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania